IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:10-cv-487 |
| v. | ) ) ) | |
| | ) | **COMPLAINT** |
| SECURITAS SECURITY SERVICES, USA INC., | ) ) ) | **JURY TRIAL DEMAND** |
| Defendant. | ) ) ) ) ) | |
| _____ | ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Sheilandra Walker who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission") alleges that defendant Securitas Security Services, USA, Inc. ("Defendant") subjected Sheilandra Walker to a sexually hostile work environment because of her sex, female. The Commission also alleges that Defendant discharged Sheilandra Walker in retaliation for complaining about the harassment.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

1

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of North Carolina.

## PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a Delaware corporation doing business in the State of North Carolina and the City of Charlotte and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Sheilandra Walker filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. From around late February 2008 until around March 26, 2008, Defendant engaged in unlawful employment practices at its Service Express client site in Charlotte, North Carolina, in violation of Sections 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1) and 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), as set forth below.

8. <u>Sexual harassment</u>.  Defendant subjected Sheilandra Walker to sexual harassment that created a sexually hostile work environment based on her sex, female.  The harassment was perpetrated by one of Defendant's male managers, who was in Walker's direct line of supervision as the site supervisor (hereinafter "Site Supervisor") at one of Defendant's client's work sites, as well as one of Defendant's male security guards who was Walker's co-worker ("Security Guard").  The harassment was severe or pervasive in that it occurred on an almost daily basis and included graphic unwelcome sexual comments, physical touching, and a pornographic text message sent to Walker's cellular telephone.

9. The Site Supervisor subjected Walker to harassment that was severe or pervasive, in that it occurred on an almost daily basis and included unwelcome sexual comments.  The sexual comments included, but were not limited to such things as the Site Supervisor telling Walker that he had "been alone for many years and loved to have sex, but needed a girlfriend and could Walker help him find a girlfriend;" that he "preferred a white girl with big boobs;" and repeatedly asking Walker if she'd had "any luck in finding him a large breasted girlfriend."  The conduct also included the Site Supervisor asking Walker, who is black, "if black women give head [oral sex]?;" and "who do you think gives the best head: black women, Spanish women, or fat, white women?;" telling Walker two to three times per week that he was "Cajun" and that "Cajun men liked women with very large breasts;" telling Walker a story about anal sex; and making offensive remarks about Walker's breasts, such as, "Jesus Christ man!  Those things have got to be heavy;" or, "oh, those things must be heavy!"  Such comments occurred on an almost daily basis.

10. Walker did not invite the sexual comments from the Site Supervisor, and thought the comments were inappropriate and offensive.  Walker would try to ignore the Site

Supervisor's comments. On or about March 25, 2008, Walker complained about the Site Supervisor's unwelcome sexually harassing behavior to Defendant.

11. The Security Guard subjected Walker to harassment that was severe or pervasive, in that it occurred on an almost daily basis and included unwelcome graphic sexual comments, gestures, stares, physical touching, and a pornographic text message sent to Walker's cellular telephone. The sexual comments included, but were not limited to, such things as telling Walker on an almost daily basis, "mmm, mmm, mmm, you have no idea what I could do to you" while staring at Walker's breasts. The sexual gestures and stares included, but were not limited to, at least once per week, the Security Guard licked his lips and grabbed his crotch while staring at Walker's breasts. Moreover, multiple times per week, the Security Guard would detain Walker from leaving the worksite in her vehicle and would stare at her breasts and/or make comments about her breasts while she was detained.

12. In addition, the Security Guard would block the door of the guard shack when Walker tried to leave and position himself so that Walker's only exit required her to bump into him or brush against him when exiting the guard shack. He would also enter the guard shack while Walker was still working, so that he was standing less than a foot away from Walker's breasts or buttocks. Both of these actions made Walker uncomfortable. On or about March 23, 2008 the Security Guard locked Walker in the guard shack, while saying, "mmm, mmm, mmm." He eventually let Walker leave after she requested to be let out. Later that evening, the Security Guard sent a picture from his cellular phone to Walker's cellular phone of a penis ejaculating.

13. Walker did not invite and was offended by the Security Guard's sexual comments and conduct. In or around late March 2008, Walker twice complained to the Site Supervisor about the Security Guard's sexual comments, gestures, and conduct. The Site Supervisor told

Walker that he would "talk to [the Security Guard]." Although Walker complained about the unwelcome sexual comments and conduct to Defendant, and Defendant otherwise knew or reasonably should have known about the harassment, the harassment continued after Walker's two complaints to the Site Supervisor.

14. <u>Retaliation discharge</u>. Around March 25, 2008, Walker complained to Defendant's branch manager and human resources manager that she was uncomfortable working at the worksite because of the sexual comments and conduct by the Site Supervisor and the Security Guard. Walker gave specific examples of the conduct she objected to and showed Defendant's managers the pornographic text message from the Security Guard. Walker also stated that the Site Supervisor was a "pervert and dirty old man." Walker asked for an immediate transfer from the site. Walker's request was not granted. Rather, Defendant's manager asked to keep Walker's cellular telephone in order to confront the Security Guard with the text message.

15. The following day, on or about March 26, 2008, when Walker went to retrieve her cellular telephone, Walker was fired by Defendant. Walker complained about the sexual harassment and was fired the next day in retaliation for engaging in a protected activity.

16. The effect of the practices complained of above has been to deprive Sheilandra Walker of equal employment opportunities and otherwise adversely affect her status as an employee, because of her sex, female and in retaliation for engaging in protected activity under Title VII.

17. The unlawful employment practices complained of above were intentional.

18. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Sheilandra Walker.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from maintaining a sexually hostile work environment or engaging in any other employment practice which discriminates on the basis of sex, and from retaliating against employees who oppose practices made unlawful by Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Sheilandra Walker, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay.

D. Order Defendant to make whole Sheilandra Walker, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, medical expenses, in amounts to be determined at trial.

E. Order Defendant to make whole Sheilandra Walker by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Sheilandra Walker punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 30th day of September, 2010.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, N.E.
Washington, D.C. 20507

s/ Lynette A. Barnes
LYNETTE A. BARNES (NC Bar #19732)
Regional Attorney

TINA BURNSIDE
Supervisory Trial Attorney

s/ Stephanie M. Jones
STEPHANIE M. JONES (GA Bar #403598)
Trial Attorney

7

EQUAL EMPLOYMENT OPPOTURNITY
COMMISSION
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, N.C. 28202
Phone: (704) 954-6471
Fax: (704) 954-6412
E-mail: Stephanie.jones@eeoc.gov


ATTORNEYS FOR PLAINTIFF

8